[994 NYS2d 292]

Daniela Rajic, Petitioner, v Paul George, Respondent.

Supreme Court, New York County, September 22, 2014

### APPEARANCES OF COUNSEL

*Gordon & Rees, LLP*, New York City, for respondent.
*Raoul Felder & Partners, P.C.*, New York City, for petitioner.

**OPINION OF THE COURT**

MATTHEW F. COOPER, J.

In this proceeding brought by petitioner mother, Daniela Rajic, to establish paternity and seek sole physical and legal custody of a minor child, the respondent putative father, Paul George, moves, pursuant to CPLR 3211 (a) (8), to dismiss the petition for lack of personal jurisdiction over him. Even though it is all but certain that respondent is the father of the five-month-old baby girl who is at the center of this case, he has gone to every length imaginable to avoid taking responsibility for his actions. And although this proceeding is only at the dismissal stage, the case is already remarkable for the scope of the litigation brought by respondent against the petitioner and the tactics employed by his attorneys.

### Background and Procedural History

The petitioner, who is 23, was born and raised in Queens, New York. From approximately August 2008 through December 2011, she attended college in Tampa, Florida. Petitioner returned briefly to Queens in March 2012 to live with her family, and thereafter entered into a one-year apartment lease in Miami, Florida in late December 2012.

The parties met in June of 2013 in Miami, where they had sexual intercourse while respondent was staying at the Fontainebleau Hotel. Thereafter, they commenced a sexual relationship over the course of the next several months in the states of California and Indiana. After petitioner informed respondent that she was pregnant, the parties privately submitted themselves to DNA testing on or about December 18, 2013. The results of that test concluded that the respondent is the biological father by the likelihood of 99.9% (*see* opposition, paternity test, exhibit K). With her lease obligation ending and the subject child approximately four months from birth, petitioner returned to New York to reside with her family. On May 1, 2014, petitioner gave birth to a daughter at New York Weill Cornell Medical Center (*see* opposition, birth certificate, exhibit C). Respondent, through the communication of counsel, assisted petitioner in paying for the related hospital bills.[1]

On May 27, 2014, petitioner, having been unsuccessful in convincing respondent to officially acknowledge paternity and

---

1. Petitioner states, and respondent does not dispute, that after the child's birth, the child was added to his health insurance (*see* Rajic aff, Sept. 4, 2014 n 3).

assume any degree of parental responsibility, commenced this filiation and child custody proceeding by verified petition and order to show cause. As permitted by the signed order to show cause, substituted service was effectuated on respondent's attorneys, the law firm of Gordon & Rees, LLP in New York. This court permitted substituted service upon a showing that personal service on respondent would be extremely difficult, if not impossible, because of the tight security that surrounds respondent as an all-star NBA player for the Indiana Pacers, and his living in a gated community to which a process server would be unable to gain access. This court also determined that the best means of affording respondent actual notice was to have the papers served on respondent's attorneys, who had been dealing on behalf of respondent with petitioner and her attorneys throughout the pregnancy and the child's birth, and who had informed petitioner's attorneys that they would be representing him in this proceeding (*see* opposition, affirmation in support of order to show cause, exhibit X). Petitioner's order to show cause was made returnable on June 27, 2014 with respondent being directed to serve and file answering papers by June 18, 2014.

Instead of submitting timely answering papers as set forth in the briefing schedule in the order, respondent's attorneys, by a notice dated June 18, 2014, and without a viable legal or factual basis to do so, attempted to remove this proceeding to the United States District Court for the Southern District of New York (the federal action) on the grounds of diversity jurisdiction. The basis given for the claim of diversity of citizenship was that respondent resides in Indiana and petitioner resides in New York. In an attempt to meet the federal court's requirement that the amount in controversy be in excess of $75,000, respondent's attorney stated in his notice of removal that the case which respondent was seeking to remove from this court to federal court was one to "determine child support" and that "because Respondent is a high income earner, and pursuant to the New York State Child Support Standards, the child support at issue in this matter far exceeds $75,000 over the course of twenty-one years" (*see* opposition, notice of removal, exhibit DD). This statement was a complete and utter fabrication as the petition is solely one for paternity and custody; nowhere in the petition, or in the accompanying order to show cause, is there a claim for, or even a mention of, child support. Thus, it unfortunately appears that respondent's attorney had no

compunction against making an absolutely untrue statement to a federal judge in order to seek removal of the custody proceeding from this court to the federal court.[2]

On June 27, 2014, petitioner filed an application to remand the federal action to this court. On July 22, 2014, Judge Lorna Schofield, citing United States Supreme Court authority applying the well-known domestic relations exception to the federal court's subject matter jurisdiction, issued an opinion and order terminating the pending dismissal motion and granting petitioner's application to remand stating that it "has no subject matter jurisdiction over the claims here" (see opposition, exhibit KK).

The day after respondent filed his spurious notice of removal, his attorneys unleashed a second line of attack against petitioner: they commenced a proceeding in Florida. The petition, filed in the Circuit Court of the Eleventh Judicial Circuit for Miami-Dade County, was verified by respondent on June 19, 2014, and is captioned "Petition to Determine Paternity and for Related Relief." The petition all but admits paternity, stating: "Upon information and belief, Petitioner [the respondent in this proceeding] is the natural father of the minor child, but also seeks reputable, scientific testing that is accepted under the law to confirm the paternity of the minor child" (see affirmation of C. Anthony Mulrain, Esq., exhibit B). The basis given for the case being brought in the Florida court is that the mother (the respondent there and the petitioner in this proceeding) resides in Miami and the child was conceived by an act of sexual intercourse that occurred in Florida. These allegations are made despite the acknowledgment set forth in the petition itself that

---

**2.** The attempt by respondent's attorneys to remove a child custody proceeding to federal court given the facts of this case and existing law is an egregious abuse of court resources and likely rises to the level of frivolity (see Rules of Professional Conduct [22 NYCRR 1200.0] rule 3.1). Furthermore, given respondent's counsel's string of flawed legal strategy and motion practice, delay tactics (i.e., the removal to federal court, with patently false statements made to seek such removal), improper applications (i.e., motion sequence No. 003 to reargue the denial of an informal telephonic adjournment request), submitting an apparent falsified affidavit (discussed in n 5, below), coupled with their wealth of inexperience in the area of domestic relations, it appears that counsel may be in violation of rule 1.1 of the Rules of Professional Conduct (rule 1.1 entitled "Competence" provides that "[a] A lawyer should provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation. [b] A lawyer shall not handle a legal matter that the lawyer knows or should know that the lawyer is not competent to handle, without associating with a lawyer who is competent to handle it").

"respondent has been visiting her parents [in Queens, New York] since the birth of the minor child," and the clear evidence that the unprotected act of intercourse that resulted in the pregnancy occurred on or about August 12, 2013 in California, two months later than the act of intercourse occurring in Florida (*see* opposition, aff of Daniela Rajic at 6).

Perhaps the most extraordinary aspect of the Florida petition is that the "related relief" that respondent seeks includes a demand that "parental responsibility be awarded solely to the Father," with the petitioner to be granted "limited parental time-sharing with the child." In demanding this relief, respondent makes the startling claim that he is "the best parent to care for the minor child on a day-to-day basis," and that respondent "is not capable of the care of the minor child . . . due to the fact that [she] is currently unemployed." It is beyond comprehension how respondent could vouch for his skill at caring for the child while disparaging the petitioner's abilities when he has never even seen the child, asked to see the child, or offered to provide for the child's needs beyond paying for some medical expenses.

On July 25, 2014, respondent filed the instant motion to dismiss the child custody and paternity petition now before this court. The return date for the motion was set for September 15, 2014. After denying a late telephonic request by respondent to adjourn the motion, the court heard argument from counsel on the return date. In addition, petitioner gave sworn testimony on the record in open court, and respondent's attorney was given ample time to cross-examine her. Her testimony was convincing, credible and uncontradicted, as she established that New York, and not Florida, is her residence and her domicile. Even more importantly, petitioner testified under oath that the child has lived continuously and uninterrupted in Queens with petitioner and her family since birth. Although directed to appear by this court in its order of July 31, 2014, and by the order of Justice Lori Sattler when she signed respondent's order to show cause on July 25, 2014, respondent failed to appear in court on the return date of his motion without requesting that his appearance be waived, giving notice to the court or opposing counsel, or offering any reasonable excuse for his absence.[3]

---

3. Although the court is aware that respondent severely broke his leg in a basketball game on August 1, 2014, petitioner aptly notes that despite the injury, respondent has nonetheless been able to attend press conferences,

### Analysis and Discussion

The Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA), enacted in New York as Domestic Relations Law article 5-A (§ 75 *et seq.*) applies to this petition. Domestic Relations Law § 75-a (4) provides that a " '[c]hild custody proceeding' means a proceeding in which legal custody, physical custody . . . with respect to a child is an issue" and "includes a proceeding for . . . paternity." Further, a New York court has jurisdiction to make an initial child custody determination if

> "this state is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state" (Domestic Relations Law § 76 [1] [a]).

Domestic Relations Law § 75-a (7) defines the child's "home state" as

> "the state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child custody proceeding. *In the case of a child less than six months of age, the term means the state in which the child lived from birth with any of the persons mentioned.* A period of temporary absence of any of the mentioned persons is part of the period" (emphasis added).

Given the above statutory authority along with the undisputed assertion that the child was born in New York on May 1, 2014 and has not left the state, or even New York City, since birth, the child's home state is undoubtedly New York. Moreover, petitioner's sworn testimony both in her affidavit and elicited at the oral argument on this motion in accordance with Domestic Relations Law § 75-f[4] firmly establishes that she is a domiciliary of New York State, and not Florida, and that she resides with the child in New York. Accordingly, it must be concluded that this court has jurisdiction to make a determination as to custody

travel for recreation and ride in his new Ferrari (*see* opposition, exhibits T, U, V).

4. Domestic Relations Law § 75-f is entitled "Priority" and states that "[i]f a question of existence or exercise of jurisdiction under this article is raised in a child custody proceeding, the question, upon request of a party, child or child's attorney must be given priority on the calendar and handled expeditiously."

of the child, and respondent's motion to dismiss the petition must be denied.

Respondent argues that personal jurisdiction over him is required to determine custody.[5] This is simply incorrect. Domestic Relations Law § 76 (3) provides that "[p]hysical presence of, or personal jurisdiction over, a party or a child is not necessary or sufficient to make a child custody determination." It is undisputed that actual notice of the proceeding to respondent was given by service upon his New York counsel in accordance with Domestic Relations Law § 75-g. Respondent's continued reference to petitioner's "claim for support" is at this point, a red herring and misplaced. Nowhere in the petition is there a claim for child support and, hence, that issue is not currently before this court and will not be addressed here.

As to the portion of the petition for paternity, anomalous as it may seem, having jurisdiction over custody of the child does not confer this court with jurisdiction over respondent when it comes to determining if he is indeed that child's father (*see Matter of H. v M.*, 47 AD3d 629 [2d Dept 2008]). Every indication is that respondent's contact with New York is limited to those few times each year when he travels here to play the New York Knicks and the Brooklyn Nets. These sole instances of contact with New York State fail to meet the minimum contacts threshold, set forth under Family Court Act § 580-201,[6] that allow New York to exercise long-arm jurisdiction over a non-

---

5. It must be noted that respondent's affidavit dated June 25, 2014 raises serious questions of validity. It appears that the affidavit that was submitted in connection with the federal action was resubmitted in this action with a changed caption. If one examines the sworn affiant and notary signatures on the last page on both documents, they appear to be *identical*. If respondent's counsel submitted the same signature page of respondent on both documents, counsel may be subject to disciplinary action and may even have committed a crime (*see* Penal Law § 175.30 *et seq.*). At the very least, it is sanctionable.

6. Section 580-201 of the Family Court Act provides:
"In a proceeding to establish, enforce, or modify a support order or to determine parentage, the tribunal of this state may exercise personal jurisdiction over a nonresident individual or the individual's guardian or conservator if:
"(1) the individual is personally served with a summons and petition within this state;
"(2) the individual submits to the jurisdiction of this state by consent, by entering a general appearance, or by filing a responsive document having the effect of waiving any contest to personal jurisdiction;
"(3) the individual resided with the child in this state;

resident in matters of paternity and support (*see Matter of Leslie GG. v William HH.*, 175 AD2d 378 [3d Dept 1991]).

It must be underscored, however, that without the establishment of paternity, respondent lacks standing to contest custody of the child barring extraordinary circumstances not known to be evident here (*see Matter of Marquis B. v Alexis H.*, 110 AD3d 790 [2d Dept 2013]; *Matter of Commissioner of Social Servs. of City of N.Y. [Sarah P.]*, 216 AD2d 387 [2d Dept 1995]). It follows that unless respondent submits to paternity testing in this court, petitioner will be granted sole legal and physical custody on default. Simply stated, if respondent wishes to continue to use jurisdiction as a means of postponing an inevitable finding of paternity—apparently out of concern that in some future proceeding he will be made to pay child support—that is his prerogative. But if he insists on pursuing this strategy, he will be forfeiting his right to be heard on the vital issues of how and by whom the child is to be raised.

In light of the foregoing, it is hereby ordered, that respondent's motion to dismiss is granted as to the petition for paternity, and otherwise denied.

---

"(4) the individual resided in this state and provided prenatal expenses or support for the child;

"(5) the child resides in this state as a result of the acts or directives of the individual;

"(6) the individual engaged in sexual intercourse in this state and the child may have been conceived by that act of intercourse;

"(7) the individual asserted parentage in the putative father registry maintained in this state by the department of social services; or

"(8) there is any other basis consistent with the constitutions of this state and the United States for the exercise of personal jurisdiction."